UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Palm Beach Division)

Case No. _____

LADENBURG THALMANN & CO. INC.,

    Plaintiff,

v.

BRIGHT MOUNTAIN MEDIA, INC.,

    Defendant.

_____/

## COMPLAINT

Plaintiff Ladenburg Thalmann & Co. Inc., through its undersigned counsel, hereby sues Defendant Bright Mountain Media, Inc., and alleges:

## THE PARTIES

1. Plaintiff Ladenburg Thalmann & Co. Inc. ("Ladenburg" or "Plaintiff") is a Delaware corporation with its principal place of business in New York, New York.

2. Defendant Bright Mountain Media, Inc. ("BMTM" or "Defendant") is a Florida corporation with its principal place of business in Boca Raton, Florida.

## NATURE OF THE ACTION

3. The parties hereto entered into an Investment Banking Agreement that provided, inter alia, that Plaintiff would be the exclusive investment banker for Defendant during the term of the agreement.

4. Defendant thereafter entered into investment banking transactions within the scope of the agreement, thereby incurring fees due to Ladenburg.

5. Defendant has refused to pay Ladenburg the nearly $1.5 million owed (plus

interest, fees, and expenses), and Ladenburg is seeking payment pursuant to that agreement.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The parties are fully diverse because Plaintiff is a citizen of New York and Defendant is a citizen of Florida. In addition, as further discussed below, the matter in controversy exceeds $75,000 in the aggregate, exclusive of fees, interest and costs.

7. This Court has personal jurisdiction over BMTM because BMTM maintains its principal place of business in Boca Raton, Florida.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District, a substantial part of Defendant's conduct occurred in this District, and the subject agreement provides for venue in this District.

## FACTUAL ALLEGATIONS

9. BMTM promotes itself as an end-to-end digital media and advertising services platform, connecting brands with targeted consumer demographics. Its common stock trades on OTCBQ under the symbol BMTM.

10. Ladenburg is a full-service broker-dealer that was formed in 1876 and has been a member of the New York Stock Exchange since 1879. Ladenburg is a member in good standing with the Securities and Exchange Commission and FINRA.

11. On or about September 1, 2020, BMTM and Ladenburg entered into an Investment Banking Agreement, wherein BMTM retained Ladenburg as its exclusive financial advisor in connection with investment banking matters, including rendering advice regarding any potential financial or merger and acquisition transactions ("Transactions"). A copy of the Investment Banking Agreement is annexed as Exhibit A.

12. The Investment Banking Agreement includes any debt financing, offer of public or private sale, investment or transaction in BMTM's capital stock, convertible securities, options, warrants, or other rights to acquire BMTM's capital stock, or assets, or any other capital raise of any nature.

13. The Investment Banking Agreement provides for auto renewal after the initial one-year term, unless either party provided 30 days' written notice of termination. No notice of termination was provided at any relevant time. Thus, the Investment Banking Agreement remained in effect at all relevant times.

14. In order to facilitate Ladenburg's efforts to effect a Transaction, BMTM agreed that it would not authorize any other party to act on its behalf with respect to any Transaction as defined in the Agreement.

15. The Investment Banking Agreement provides in part that, if BMTM consummates a Financing Transaction during the term of the agreement, BMTM shall pay to Ladenburg a fee (the "Financing Transaction Fee") as follows:

> (i) For the portion of the Transaction involving Debt Financing, a cash Financing Transaction Fee equal to 3% of the applicable Consideration, payable by wire transfer at the closing of the Transaction; and
> (ii) For the portion of the Transaction involving Equity Securities, a cash Financing Transaction Fee equal to 7.5% of applicable Consideration, payable by wire transfer at the closing of the Transaction.
> (iii) Multiple Closings. In the event there are multiple partial closings prior to the final closing of the Transaction, the Company shall pay Ladenburg a pro-rata portion of the cash portion of the Financing Transaction Fee and shall issue to Ladenburg, or its designees, a pro-rata portion of the Warrants as soon as is practicable after each such closing.

The Investment Banking Agreement further provides for payment of a fee to Ladenburg for consummation of a merger and/or acquisition transaction:

> If the Company consummates any M&A Transaction, the Company shall pay to Ladenburg a transaction fee (the "M&A Transaction Fee"), payable by wire transfer at the closing of

each such Transaction, equal to 3.5% of the Consideration subject to a minimum fee of $350,000 per Transaction.

16.     In September 2020, after the execution of the Investment Banking Agreement, Ladenburg began working on a potential capital raise in conjunction with an up-listing to either Nasdaq or NYSE for Defendant. Ladenburg held an organizational meeting with Defendant's management, hired counsel and conducted a series of due diligence calls and meetings with Defendant's management, auditors, and lawyers. Ultimately, Defendant decided it was unable to proceed and put the process on hold.

17.     While Defendant was addressing those issues, Defendant was considering several acquisition opportunities which would have a material impact on Defendant and the timing for such an uplisting.

18.     During the engagement, Ladenburg continued to investigate numerous potential merger and acquisition targets for Defendant, made introductions to potential targets, discussed targets Defendant proposed, and held discussions with, or arranged meetings for, Defendant's management with target management teams. In some cases, Defendant provided letters of intent (LOIs). For a variety of reasons, those transactions did not come to fruition. In addition, in 2021, Defendant informed Ladenburg that it was replacing its auditors.

19.     Throughout the course of the engagement, Ladenburg worked diligently on Defendant's behalf and fulfilled its obligations under the Investment Banking Agreement. Ladenburg kept Defendant's senior personnel apprised of its ongoing efforts on Defendant's behalf.  At various times during the engagement, Ladenburg introduced and arranged meetings with potential financing partners and addressed with Defendant potential financings, including private placements, debt financings, bridge loans and other possible financing structures.

20.     On March 7, 2023, during one of Ladenburg and Defendant's regular conference

calls, Defendant informed Ladenburg that among other topics, it was considering the acquisition of a company out of bankruptcy.

21. On April 14, 2023, Defendant called to inform Ladenburg of (a) the impending announcement of the acquisition of Big Village, Insights, Inc. and (b) asked Ladenburg to lead a $25- million raise, both of which are items covered in the engagement letter. Ladenburg reminded Defendant of its financing and M&A fee obligations under the Investment Banking Agreement and confirmed it would be interested to lead the financing.

22. On April 20, 2023, Defendant filed Form 8-K/A to announce the completion of the aforementioned $20,000,000 "acquisition", funded by "financing" in the form of a "senior secured credit facility" which was an additional term loan of $26,315,789.47. "Financing" and "Acquisition" are terms which form part of the definitions in the engagement letter between Ladenburg and Defendant. Ladenburg subsequently invoiced Defendant for (a) the acquisition fee and (b) the debt financing fee. A copy of the press release issued by Defendant concerning the transactions is annexed as Exhibit B. A copy of the Form 8-K filed by Defendant concerning the transactions is annexed as Exhibit C.

23. Over the years, Ladenburg has invited Defendant to present at one or more of its investor conferences. On April 27, 2023, Ladenburg held its most recent in-person investor conference in Manhattan. This event was attended in-person by Defendant's CEO, notably _after_ Defendant received its acquisition invoice from Ladenburg. At the event, the CEO presented Defendant to investors. Ladenburg also held an in-person investment banking meeting with the CEO in person.

24. Pursuant to the terms of the Investment Banking Agreement, as a result of those Transactions, Defendant incurred several fees due to Ladenburg - a Financing Transaction Fee of

$791,273.68, plus an M&A Transaction Fee of $700,000. Accordingly, Defendant owes Ladenburg fees totaling $1,491,273.68, which were due and payable to Ladenburg at the closing of those transactions but were not paid by Defendant.

25. Ladenburg rendered invoices to Defendant for the unpaid fees for the Financing Transaction and the M&A Transaction, copies of which are annexed as Exhibits D and E, respectively.

26. Defendant has refused to pay Ladenburg for the unpaid fees, despite the obligation to pay such fees.

27. Ladenburg fully performed its obligations under the Investment Banking Agreement. In failing to make the required payments, Defendant breached the Investment Banking Agreement. Pursuant to the terms of the agreement, Ladenburg is entitled to recover from Defendant its reasonable attorneys' fees and expenses and costs.

## COUNT I
**(Breach of Contract)**

28. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27, as if set forth in full herein.

29. The Investment Banking Agreement constitutes a valid and binding agreement between the parties.

30. Ladenburg fully performed its duties and obligations pursuant to the terms of the agreement.

31. As set forth herein, Defendant breached its contractual obligations to Ladenburg and has damaged Ladenburg.

32. By virtue of the foregoing, the damages are $791,273.68 plus interest for the Financing Transaction, together with $700,000 plus interest for the M&A Transaction, for a total

amount due from Defendant to Ladenburg of $1,491,273.68 plus interest.

33.     Pursuant to the terms of the Investment Banking Agreement, Ladenburg is also entitled to recover from Defendant its reasonable costs and expenses in connection with this matter including, but not limited to, its reasonable attorneys' fees and expenses and costs to be determined by the Court.

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor against Defendant for $1,491,273.68, plus interest, costs and attorneys' fees and expenses incurred by Plaintiff, together with such other and further relief as the Court deems proper.

Dated: July 11, 2023

Respectfully submitted,

SALLAH ASTARITA & COX, LLC
*Counsel for Plaintiff*
3010 North Military Trail, Suite 210
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/James D. Sallah
**James D. Sallah, Esq.**
Fla. Bar No. 0092584
Email: jds@sallahlaw.com
**Patrick J. Rengstl, P.A.**
Fla. Bar No. 0581631
pjr@sallahlaw.com